IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ANDRES CORONADO, R33300, ) ) ) Plaintiff, ) ) vs. ) ) LIEUTENANT CUMMINGS, ) LIEUTENANT SISSION, ) C/O DALTON, ) WEXFORD HEALTH SOURCES, INC., ) ) Defendants. ) | Case No. 24-cv-2220-MAB |

**MEMORANDUM & ORDER**

**BEATTY, Magistrate Judge:**

Plaintiff Andres Coronado, an inmate of the Illinois Department of Corrections (IDOC) currently detained at Centralia Correctional Center, brings this civil rights action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights. (Doc. 1). Specifically, Plaintiff alleges that the defendants were deliberately indifferent to his pleas for mental health attention, and that Wexford failed to adequately staff the mental health unit.

The Complaint (Doc. 1) is now before the Court[1] for preliminary review pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a)-(b). Any portion

---

[1] The Court has jurisdiction to resolve Plaintiff's motions and to screen his Complaint in light of his consent to the full jurisdiction of a magistrate judge and the Illinois Department of Corrections' and Wexford's limited consent to the exercise of magistrate judge jurisdiction as set forth in the Memorandums of Understanding between the Illinois Department of Corrections and Wexford and this Court.

of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b). At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## THE COMPLAINT

In August of 2023, Dr. Shah prescribed Cymbalta to Plaintiff and told him to inform the healthcare unit if he noticed any ill-effects. After two months on Cymbalta, Plaintiff noticed a change in his attitude, demeanor, and aggression. He requested a visit and was seen on or around November 20, 2023. In response to his reported symptoms, the nurse indicated that the Cymbalta would be discontinued but that it would take some time before the medication was completely out of his system. (Doc. 1 at 6). She also indicated that Plaintiff would be referred to mental health for a follow-up.

On December 1, 2023, Plaintiff's cell was subject to a shakedown during which he and his cellmate's property was strewn about the cell. (Doc. 1 at 6). He was upset, particularly because coffee had been spilled on his tablet rendering the tablet non-functional. He asked Defendant Cummings about the incident because Cummings was present for the shakedowns, but Cummings claimed no knowledge. (Doc. 1 at 6). Plaintiff was angered by the response and told Cummings he planned to declare a hunger strike at lunch. Cummings laughed, which made Plaintiff even more upset. Plaintiff then told Cummings about four times that he planned to kill himself, but Cummings just walked away.

At lunch Plaintiff sought Cummings but initially could not locate him. (Doc. 1 at 7). He informed Defendant Sission that he wanted to go on a hunger strike, but Sission refused to place him on a hunger strike, so he told Sission he was going to kill himself. Sission directed Plaintiff to return to his housing unit. As Plaintiff prepared to leave the chow hall he encountered Cummings. He told Cummings he wanted to go on a hunger strike and Cummings told him to sit down. Plaintiff sat for about 30 minutes, but Cummings never returned. When he asked Sission about Cummings' whereabouts, Sission told him to go back to his housing unit. Plaintiff again informed Sission that he was going to kill himself, but Sission did nothing.

Upon return to the housing unit, Plaintiff asked Defendant C/O Dalton to call Cummings. He told Dalton that if Cummings did not respond within 20 minutes, he planned to kill himself. No one responded so Plaintiff attempted suicide by hanging himself. (Doc. 1 at 7). Plaintiff was extracted from his cell and was then eventually transported to the hospital. (Doc. 1 at 7). Plaintiff survived his suicide attempt and faults Defendants Cummings, Sission, and Dalton for failing to protect him and/or exhibiting deliberate indifference to his serious mental health needs.

He also faults Wexford Health Sources, Inc., for maintaining a policy or practice of understaffing the mental health department and thus failing to render adequate care. (Doc. 1 at 8). He alleges that because the department was understaffed, he did not receive the services he was referred for 11 days earlier, and the appointment may have prevented him from attempting suicide. (Doc. 1 at 8).

Plaintiff seeks monetary compensation. (Doc. 1 at 9). He attached copies of his grievances about these issues. (Doc. 1 at 10-14).

Based on the allegations in the Complaint, the Court designates the following claims:

> **Claim 1:** **Eighth Amendment deliberate indifference or failure to protect claim against Defendants Cummings, Sission, and Dalton for their actions on December 1, 2023, when faced with Plaintiff's statements about suicide;**
>
> **Claim 2:** ***Monell* claim against Wexford for understaffing the healthcare unit and failing to provide Plaintiff with an appointment recommended 11 days earlier;**

The parties and the Court will use these designations in all future pleadings and orders unless otherwise directed by a judicial officer of this Court. Any claim that is mentioned in the Complaint but not addressed in this Order is considered dismissed without prejudice as inadequately pled under *Twombly*. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face").

## DISCUSSION

An Eighth Amendment claim arising from the denial of medical care consists of an objective and a subjective component. *Berry v. Peterman*, 604 F.3d 435, 439–40 (7th Cir. 2010). A plaintiff must show that he suffered from a serious medical condition (i.e., an objective standard) and also show that each defendant responded with deliberate indifference (i.e., a subjective standard). *Id.* To satisfy the subjective component, a

prisoner must demonstrate that an official knew of and disregarded an excessive risk to inmate health. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005).

The Seventh Circuit has also acknowledged that sometimes claims about suicide attempts in prison fall at the intersection of deliberate indifference and the pointless infliction of psychological injury. *See Lisle v. Welborn*, 933 F.3d 705, 716-17 (7th Cir. 2019). In *Lisle* the Seventh Circuit found that a claim against a prison nurse for verbal harassment encouraging an inmate's suicidal behavior while he was on suicide watch should have survived summary judgment because the inmate tendered evidence that the comments from the nurse were more than plain harassment and may have targeted Plaintiff's known psychological vulnerabilities. Where the harm at issue is a suicide or attempted suicide, the second, subjective component of an Eighth Amendment claim requires a dual showing that the defendant: (1) subjectively knew the prisoner was at substantial risk of committing suicide and (2) intentionally disregarded the risk. *Collins v. Seeman*, 462 F.3d 757, 761 (7th Cir. 2006).

In this case, Plaintiff's allegations are sufficient to proceed against Defendants Cummings, Sission and Dalton. He alleges that he informed Cummings and Sission repeatedly of his intent to commit suicide, and that he told Dalton at least once that he intended to commit suicide. Within minutes or hours of the last threat, he attempted suicide by hanging himself. Plaintiff was extracted from his cell and ultimately

transported to the hospital.[2] These allegations are sufficient to support a plausible Eighth Amendment claim against Cummings, Sission, and Dalton.

Plaintiff also faults Defendant Wexford for understaffing the mental health department. He posits that the understaffing meant that he received a referral to mental health 11 days before his suicide attempt, but he was not seen, so he missed the chance for his suicide attempt to be mitigated by appropriate care.

Wexford is a private corporation that cannot be held liable under § 1983 unless the constitutional violation was caused by an unconstitutional policy or custom of the corporation itself. *Shields v. Illinois Dept. of Corrections*, 746 F.3d 782, 789 (7th Cir. 2014); *see also Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978). Thus, under *Monell*, for Plaintiff to recover from Wexford, he must show that the alleged constitutional violation was caused by: (1) an express policy that caused a constitutional deprivation when enforced; (2) a widespread practice that was so permanent and well-settled that it constituted a custom or practice; or (3) a person with final policymaking authority. *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 235 (7th Cir. 2021). In other words, a plaintiff must show that "systematic and gross deficiencies in …[IDOC's] medical care system," caused his injury, and also that "a policymaker or official knew about these deficiencies and failed to correct them." *Daniel v. Cook Cty.*, 833 F.3d 728, 735 (7th Cir. 2016). Alternatively, a plaintiff must show that "the unlawful practice was so

---

[2] Although Plaintiff's Complaint does not say, the Court presumes this extraction occurred immediately as Plaintiff survived his suicide attempt.

pervasive that acquiescence on the part of policymakers was apparent and amounted to a policy decision." *Dixon v. Cty. Of Cook*, 819 F.3d 343, 348 (7th Cir. 2016).

Plaintiff identifies a policy or practice—understaffing, but he does not have sufficient allegations to demonstrate the understaffing issue *caused* his harm. There are no allegations that indicate or reasonably infer that understaffing actually caused the eleven-day wait for his visit or that the mental health department should have viewed the visit as urgent. Instead, he merely speculates that the understaffing may have failed to prevent his harm because if he had been seen sooner a visit *might* have prevented him from being suicidal on December 1, 2023. Perhaps if Plaintiff alleged that he declared a crisis before committing suicide and did not get a response due to understaffing, he might be able to establish causation. However, the only allegations regarding the issue of causation is Plaintiff's speculation. Accordingly, Claim 2 against Wexford is insufficient as currently pled.

## DISPOSITION

**IT IS HEREBY ORDERED THAT Claim 1** of the Complaint (Doc. 1) survives initial screening as described above against Defendant Cummings, Sission, and Dalton. By contrast, **Claim 2** against Wexford Health Sources, Inc., is dismissed as insufficiently pled and the Clerk of Court is **DIRECTED** to **TERMINATE** Wexford Health Sources, Inc.. Plaintiff's Motion for Service of Process at Government Expense (Doc. 3) is **GRANTED**.

The Clerk of Court is **DIRECTED** to prepare for Defendants Cummings, Sission, and Dalton: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons),

and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint (Doc. 1), and this Memorandum and Order to Defendants' place of employment as identified by Plaintiff. If Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on Defendant, and the Court will require Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merits Review Order.

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, regardless of whether his application to proceed in forma pauperis was granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that he is under a continuing obligation to inform the Clerk of Court and each opposing party of any address changes; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than 14 days after a transfer or other change of address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for failure to prosecute. FED. R. CIV. P. 41(b).

The Clerk of Court is **DIRECTED** to enter the standard HIPAA protective order.

**IT IS SO ORDERED.**

**Dated: October 31, 2024**

/s/ Mark A. Beatty
**MARK A. BEATTY**
**United States Magistrate Judge**

## **Notice to Plaintiff**

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least 60 days from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take 90 days or more. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at his time, unless otherwise directed by the Court.